IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JEFFREY WIMES,

      Petitioner,

v.                                                                CASE NO. 4:15-cv-462-WS-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner initiated this case by filing a *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1.  The Petition

stems from Petitioner's Leon County jury-trial conviction of sexual battery

on a child under 12 years of age by penetration, for which he is serving a

life sentence.  The Respondent has filed a response to the merits of the

Petition, ECF No. 16, with relevant portions of the state-court record, ECF

No. 17.  Although afforded an opportunity to do so, Petitioner has not filed a

reply.  Upon due consideration of the Petition, the response, and the state-

court record, the undersigned recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has
determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing
Habeas Corpus Petitions Under Section 2254.

# I. **State-Court Proceedings**

Petitioner was represented at trial by appointed conflict counsel Ethan Way.  Prior to trial, pursuant to counsel's motion, Petitioner underwent expert psychological evaluation and was found competent to proceed.  ECF No. 17-1 at 70-77.

The State's evidence included a confession that Petitioner made to an investigator, Detective Melinda McBride, while he was in custody for a violation of probation in an unrelated case.  Other evidence included the victim's live testimony, statements that she made to the Child Protective Team (CPT) investigators, and the investigators' testimony about their interviews with the victim and investigation of the case.  The trial testimony included the victim's statements to CPT investigators that she felt jealousy toward Petitioner after he moved in with her family.  ECF No. 17-2 at 39-171 (trial transcript).

Prior to trial, Petitioner's counsel filed a renewed motion to suppress the confession on the ground that it was involuntary.  *Id.* at 156.  The trial court conducted an evidentiary hearing on the motion to suppress as well as the State's motion to introduce child hearsay evidence.  A recording of Detective McBride's interview of Petitioner was played at the hearing, and

McBride also testified.  At the conclusion of the hearing, the court found that Petitioner had been properly advised of his *Miranda*[1] rights and had unequivocally waived them prior to making his confession.  *Id.* at 157-91.

The victim, B.W., and two CPT investigators testified at the hearing concerning the admission of child hearsay evidence.  *Id.* at 192-230.  The court entered a written order finding that the victim's out-of-court statements were admissible and cautioning the State that the testimony of the investigators must be carefully limited to avoid needlessly cumulative testimony.  *Id.* at 93-97.

The victim was 13 years old at the time of trial.  She testified that Petitioner began sexually abusing her when she was nine years old, after Petitioner moved in with the victim's mother, and the abuse continued until she reported it at age 11.  The victim testified that Petitioner had sexual intercourse with her once or twice a week.  She told four girlfriends and a counselor at the Boys and Girls Club about the abuse, and shortly thereafter a DCF investigator came to her house.  The victim identified Petitioner in open court as her abuser.  *Id.* at 67-78.  In his recorded

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement that was played for the jury, Petitioner admitted having sex with the victim. *Id.* at 105-17.

The jury returned a verdict of guilty, and Petitioner received a mandatory life sentence on August 25, 2008. *Id.* at 111-18. Petitioner appealed, asserting that the trial court erred in denying the motion to suppress. ECF No. 17-2 at 232-59. The First DCA affirmed, *per curiam*, without written opinion. *Id.* at 307.

Petitioner then sought postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting seven claims of ineffective assistance of counsel. ECF No. 17-3 at 12-63, 70-75 (original and amended Rule 3.850 motions). Following an evidentiary hearing, at which Petitioner was represented by appointed counsel, the trial court denied relief on all of Petitioner's claims. *Id.* at 100-85. Petitioner appealed, arguing that (1) the trial court did not abide by state law in setting forth its findings of fact and conclusions of law in denying relief; and (2) the trial court erred on the merits in denying Grounds One, Two, Three, and Six of his original postconviction motion, all of which concerned counsel's asserted failure to hire various expert witnesses or take depositions of the victim or family members. *Id.* at 189-201. In its response brief, the State argued, *inter alia*, that Petitioner's

remaining claims were not raised in his initial brief and therefore were deemed abandoned.  *Id.* at 216 n.3.  Petitioner did not argue otherwise in his reply brief.  *Id.* at 230-36.  The First DCA affirmed, *per curiam*, without written opinion; rehearing was denied.  *Id.* at 239, 246.

Petitioner then filed the instant federal habeas corpus petition, which Respondent concedes is timely.  Petitioner asserts eight claims for relief. ECF No. 1.  For his first claim, Petitioner contends that the trial court erred in denying his motion to suppress his confession.  Petitioner's second, third, fourth, and seventh claims all allege that counsel was ineffective for failing to retain certain expert witnesses and for failing to take depositions of the victim or family members.  Petitioner's fifth claim alleges that counsel was ineffective for failing to call witnesses or provide a meaningful defense. His sixth claim alleges that counsel was ineffective for failing to cross-examine the victim regarding her asserted "inconsistent" and "unbelievable" statements.  Petitioner's eighth claim alleges that counsel was ineffective for failing to renew a motion for a competency evaluation and to request a second expert to determine his competency.  ECF No. 1.  Respondent contends that Petitioner's Claims 5, 6, and 8 are unexhausted and procedurally defaulted.  ECF No. 16.  For the reasons discussed below, the

Court agrees that such claims are procedurally defaulted and foreclosed from federal review. The Court's discussion of the merits of the Petition is therefore limited to Petitioner's Claims 1, 2, 3, 4 and 7, as enumerated in the Petition.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.
*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas
courts are precluded from reviewing the merits of procedurally
defaulted claims unless the petitioner can show either (1) cause for the
failure to properly present the claim and actual prejudice from the default,
or (2) that a fundamental miscarriage of justice would result if the claim
were not considered.  *Id.* at 1302, 1306.  A fundamental miscarriage of
justice exists "where a constitutional violation has probably resulted in the
conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144,
1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a
petitioner must present new reliable evidence that was not presented at
trial showing that "it is more likely than not that no reasonable juror would
have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*,
513 U.S. 298, 324 (1995).

As explained above, it is plain from the record that Claims 5, 6, and 8
are procedurally defaulted because Petitioner failed to appeal the denial of
those same claims to the First DCA after his Rule 3.850 motion was
denied.  *See* R. 17-3 at 189-201 (Petitioner's initial appellate brief), 216 n.3
(State's response brief), 230-36 (Petitioner's reply brief).  Petitioner has not

opposed the Respondent's argument that such claims are procedurally defaulted and foreclosed from federal review.  Claims 5, 6, and 8 are therefore due to be denied as unexhausted.

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow, ___ U.S. ___,* 134 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at 15 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id.* This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id.* at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id.* at 16 (quoting *Harrington*, 131 S.Ct. at 786). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id.* (quoting *Harrington*, 131 S.Ct. at 786).

## IV. <u>Discussion</u>

### *A. Claim One: Trial Court's Denial of Motion to Suppress*

Petitioner argues that the trial court erred by denying his motion to suppress because Detective McBride failed to contact the attorney appointed for his VOP proceeding prior to questioning him and did not meaningfully advise him of his *Miranda* rights.  Petitioner claims that his IQ range is 60-70 and that he did not have the capacity to understand

McBride's questions without having a lawyer present.  Petitioner contends

that McBride lied to him by claiming that she had obtained evidence against

him in order to secure his incriminating statements.  ECF No. 1 at 5-6.

In *Miranda*, the Supreme Court formulated a warning that must be

given to suspects before they may be subjected to custodial interrogation.

The substance of the warning is the following:

> He must be warned prior to any questioning that he has the
> right to remain silent, that anything he says can be used against
> him in a court of law, that he has the right to the presence of an
> attorney, and that if he cannot afford an attorney one will be
> appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479. If a defendant unambiguously requests counsel

or to remain silent, police must cease interrogation. *See Berghuis v.*

*Thompkins*, 560 U.S. 370, 382 (2010); *Davis v. United States*, 512 U.S.

452, 459 (1994).

Even absent the accused's invocation of the right to remain silent, the

accused's statement during a custodial interrogation is inadmissible at trial

unless the prosecution can establish that the accused "in fact knowingly

and voluntarily waived [*Miranda*] rights" when making the statement. *North*

*Caroline v. Butler*, 441 U.S. 369, 373 (1979). The government bears a

"heavy burden" to demonstrate that the waiver was voluntary, knowing, and

intelligent, *see Miranda*, 384 U.S. at 475, but the Supreme Court has held that this burden "is not more than the burden to establish waiver by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The inquiry into whether a waiver was voluntary, knowing, and intelligent is twofold, or, stated another way, "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Id.*

The Supreme Court has long taken into account the personal characteristics of the defendant in determining whether his will was overborne in the giving of an incriminating statement. One of the factors taken into account is the defendant's mental capacity. *See, e.g.*, *Fikes v.*

*Alabama*, 352 U.S. 191, 198 (1957) (less than third grade education);

*Culombe v. Connecticut*, 367 U.S. 568, 572 (1961) (mental defect). While

the defendant's mental capacity is a consideration in determining

voluntariness, it is "relevant only in establishing a setting in which actual

coercion might have been exerted to overcome the will of the suspect."

*Procunier v. Atchley*, 400 U.S. 446, 453–54 (1971).  Absent actual

coercion, even a person with mental disorders or a low IQ can be found to

have confessed voluntarily. *See Connelly*, 479 U.S. at 164; *see also United

States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) (citing *Connelly*, 479

U.S. at 169–70; *Coleman v. Singletary*, 30 F.3d 1420, 1426 (11th Cir.

1994); *Purvis v. Dugger*, 932 F.2d 1413, 1422–23 (11th Cir. 1991).

At the hearing on the motion to suppress, Petitioner's counsel argued

to the trial court that the court should consider the totality of the

circumstances in evaluating the voluntariness of Petitioner's statements.

Counsel conceded that at the time of McBride's interrogation Petitioner was

in custody pursuant to an outstanding VOP warrant that did not at that time

implicate the sexual battery charges underlying this case.  ECF No. 17-1 at

185-87.  Counsel therefore abandoned an argument made in a previous

suppression motion that the confession was inadmissible because

Petitioner at the time was represented by counsel.  *Id.* at 187.

McBride testified that she has been a member of LCSO for a little over 15 years and has had specialized training in conducting interviews. She has conducted hundreds of interviews of suspects. When she interviewed Petitioner, she read him his rights from the *Miranda* form used by LCSO.  Petitioner indicated that he understood and that he was willing to speak with her about the case she was investigating.  The State introduced into evidence a copy of the waiver of constitutional rights form signed by Petitioner.  At no point did Petitioner ask to have an attorney or to speak with an attorney. Based on her observations of him and his responses to her questions, Detective McBride felt that he wanted to speak with her. She had no reason to believe that Petitioner was mentally retarded or mentally ill. During the interview, McBride stated that she was not going to talk to Petitioner unless he waived his rights.  ECF No. 17-1 at 158-65.

McBride acknowledged that during her interview she encouraged Petitioner to "come clean," and when he denied any wrongdoing she stated "[s]o the physical evidence that I've spent the last two days getting speaks for nothing?"  *Id.* at 173-74.  At that point, no physical evidence had been

collected although the CPT examination of the victim had occurred earlier that same day. *Id.* at 174-75. At the suppression hearing, McBride testified that she may have used the "wrong word" and should have said that they had obtained "testimonial", rather than physical, evidence. *Id.* Over the remaining course of the interview, Petitioner admitted having a sexual relationship with the victim. His statements were largely focused on exculpating himself by claiming that the adolescent victim initiated a sexual relationship with him. ECF No. 17-2 at 96-116.

After considering McBride's testimony and the recorded interview with Petitioner, the trial court found that Petitioner acknowledged his rights, signed the written waiver form, and gave no indication to McBride that he wanted to invoke his right to counsel. The court further determined that it was apparent from the evidence that there was no bad faith on McBride's part. The court therefore denied Petitioner's motion to suppress his confession as involuntary. ECF No. 17-1 at 190-91. The First DCA summarily affirmed this ruling without a written opinion indicating whether it did so based on the totality of the circumstances. ECF No. 17-2 at 307.

"[T]he summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.

2002); *see also Harrington*, 562 U.S. at 99.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Harrington*, 562 U.S. at 102; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Reviewing the record of the suppression hearing, this Court may readily conclude that the First DCA's rejection of Petitioner's claim could have been based upon the theory that the totality of the circumstances indicated that Petitioner's waiver of his *Miranda* rights and his subsequent statements to Investigator McBride were knowing and voluntary.

Petitioner argues that McBride's statement regarding "physical evidence" coerced his subsequent confession to having sex with the victim.

ECF No. 1 at 5-6.  Petitioner's counsel acknowledged at the suppression hearing that while a confession is not involuntary solely because law enforcement is deliberately untruthful in its questioning, "it is an element that can be considered in whether or not the statement given by a person is voluntary," under the totality of the circumstances. ECF No. 17-1 at 185. Further, in his brief on direct appeal Petitioner acknowledged that "[w]hile the officer could lie to the Defendant about the evidence without invalidating the confession, she could not lie to him, mislead him, or trick him regarding his rights under *Miranda*."  ECF No. 17-2 at 244.  In his habeas petition, Petitioner argues that by misleading him about evidence she had obtained, McBride improperly coerced his confession.  In rejecting this claim, the trial court concluded that McBride did not act in "bad faith." *Id.* at 190.

As Respondent argues, McBride's assertedly misleading statement is only one factor that must be considered in evaluating the voluntariness of Petitioner's confession.  *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (misleading statement by police that codefendant had confessed did not make otherwise voluntary confession inadmissible, viewing the totality of the circumstances); *Fitzpatrick v. State*, 900 So.2d 495, 511 (Fla. 2005)

(statement induced by detective's false suggestion that he could prove

defendant was at scene of crime did not render statement involuntary).

McBride's statement regarding "physical" evidence did not implicate the

accuracy of her explanation of Petitioner's *Miranda* rights and whether

Petitioner understood that he had the right not to speak to the investigator.

Petitioner has failed to present evidence to rebut the state court's finding

that Petitioner's waiver of his *Miranda* rights was not the product of

coercive "bad faith" by McBride.  In the absence of any evidence of

coercion by McBride, the state court reasonably concluded that Petitioner's

waiver was voluntary.

The next issue is whether the state court reasonably rejected

Petitioner's argument that his *Miranda* waiver was unknowing due to his

low IQ and alleged inability to understand his rights.  As previously

discussed, the waiver must be made with a full awareness of both the

nature of the rights being abandoned and the consequences of the decision

to abandon them. Here, Petitioner did not dispute that McBride read him his

*Miranda* rights from the pre-printed form, thus notifying him that he had the

right to remain silent and the right to counsel.  McBride testified at the

suppression hearing that there was nothing to suggest that Petitioner was

mentally incapable of understanding her questions, and a review of

Petitioner's statements to her does not suggest that he was having any

difficulty understanding her explanation of his rights or her subsequent

questions.  In the absence of any evidence that he was incapable of

understanding the proceedings, the state court reasonably found that

Petitioner's waiver of his *Miranda* rights was made knowingly.

Lastly, Petitioner suggests that his rights were violated because

McBride did not ask him if he had been appointed counsel prior to

questioning him.  ECF No. 1 at 5.  As explained above, Petitioner's trial

counsel abandoned this argument as a basis for suppressing his

confession.  ECF No. 17-1 at 186-87.  Even if this argument were properly

preserved for federal habeas review, Petitioner is entitled to no relief.

Petitioner admits that he had been appointed counsel for his VOP

proceeding, but he never indicated to McBride that he wanted to speak with

an attorney before answering her questions even after being advised of his

right to counsel.  Further, the fact that Petitioner was appointed counsel for

his arrest on a VOP warrant that preceded the sexual battery charge did

not preclude law enforcement from seeking his subsequent consent to

interrogation, absent an invocation of his right to have counsel present

during questioning, and did not limit his ability to state that he wanted counsel present for the post-arrest questioning by McBride.  *See U.S. v. Rojas*, 553 Fed. Appx. 891, 2014 WL 241772, *2 (11th Cir. 2014) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009), for the proposition that "just because a defendant is represented by counsel does not mean police are precluded from approaching the defendant and seeking the defendant's consent to interrogation").

In sum, Petitioner has failed to demonstrate that the First DCA's rejection of his claim of trial court error with respect to admission of his statement to McBride was contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, Petitioner is not entitled to federal habeas relief on Ground One. *See, e.g.*, *Oats v. Singletary*, 141 F.3d 1018, 1027 n.23 (11th Cir. 1998) (affirming district court's denial of habeas relief on petitioner's claim that trial court erred in denying motion to suppress because he lacked the mental capacity to intelligently and voluntarily waive his *Miranda* rights, where interrogating officers did not promise leniency and made no statements that would render confession involuntary); *Moore v. Dugger*, 856 F.2d 129, 134–35 (11th Cir. 1988) (affirming district court's denial of habeas relief on petitioner's claim that his mental limitations

rendered his waiver of *Miranda* rights unknowing and unintelligent).

## B. Claims Two, Three, Four and Seven: Ineffective Assistance

Petitioner's claims enumerated as two, three, four, and seven all concern related claims of ineffective assistance of trial counsel.  In Claims Two, Three, and Four, Petitioner contends that his trial counsel was ineffective for failing to retain expert witnesses to testify at trial regarding "the potential lack of veracity of children" who report sexual abuse, the forensic evidence that "could or should be found by a proper investigation of the alleged victim's genital area," and to refute the State's expert's testimony.  ECF No. 1 at 7-11.  In Claim Seven, Petitioner contends that counsel was ineffective for failing to take depositions of the victim or family members in order to discover any "coercion or other motivation" for the accusations of sexual abuse.  *Id.* at 15.

Petitioner's counsel, Ethan Way, testified at the evidentiary hearing on Petitioner's Rule 3.850 motion.  Way testified that he took the victim's deposition before trial and that "[h]er testimony in recounting of facts was consistent at the deposition, as it was at the CPT interview."  Based on the victim's deposition, Way concluded that in his opinion "both strategic and tactical . . . the less time she spent on the stand, the better."  ECF No. 17-3

at 112-13.  Way felt that it was important to be very careful as to how he questioned the victim so as not to alienate the jury.  *Id.* at 113.  Way testified that it was a difficult case to defend because of Petitioner's confession and the fact that the victim was a child.  *Id.* at 115-16.

Way testified that he did not consider hiring an expert to testify about "the lack of veracity" of child sex abuse victims because "you can't bring a witness in to basically testify that a certain class of people lie."  *Id.* at 116-17.

With regard to the lack of physical evidence, Way did cross-examine the CPT investigator but he decided not to cross-examine the victim about where evidence such as Petitioner's sperm might have been found.  *Id.* at 117-21.   At trial, the victim testified that there was no sperm, which contradicted her statement to the CPT team.  Way decided not to aggressively cross-examine the victim about that because her deposition testimony, statements to the CPT team, and Petitioner's confession "matched up more than they didn't", and Way did not believe that questioning a young victim about "oozing" body fluids was an effective trial approach with a jury.  *Id.* at 122.  He did not consider retaining an expert to address the lack of physical evidence or what forensic evidence might have

been obtained because he did not believe that an expert would have provided any evidence helpful to the defense that could not be elicited from the fact witnesses.  *Id.* at 126-27.  Instead, Way cross-examined the CPT investigator about the lack of physical evidence and argued to the jury that the lack of physical evidence created reasonable doubt of Petitioner's guilt. *Id.* at 127-29.  Way testified that "[i]f there had been medical records, or maybe there had been a pelvic examination, I probably would have had to have gotten a physician to review the notes," but he did not consider retaining an expert to refute the CPT investigator's testimony that "there is no virgin test."  *Id.* at 129-30.  Because the facts of the case were that Petitioner and the victim had an ongoing sexual relationship, Way believed that it was unlikely that a physical examination would have shown trauma, even if such an examination had been allowed by the court which, in his opinion, it would not.  *Id.*

Petitioner's postconviction counsel questioned Way about whether he should have taken depositions of the victim or family members in order to discover a motive for the accusation of sexual abuse.  *Id.* at 137-42.  Way testified that he knew the victim had made statements that she was jealous of Petitioner after he came to live with her family.  Those statements were

heard by the jury by way of the victim's statements to CPT investigators.

Way did not delve into that possible motive in cross-examining the victim

because even if the victim had expressed jealousy, as a child she was

unable to give consent to a sexual relationship and the evidence was that

Petitioner engaged in a sexual relationship with the victim over a long

period of time.  Way testified that he cross-examined the victim in a way

that he felt was consistent with the theory of the defense.  His main

strategies in defending the case were to attempt to suppress Petitioner's

confession and to exclude the CPT investigator's testimony about the

victim's hearsay statements, neither of which ultimately proved successful.

*Id.* at 142-47, 151-52.

At the conclusion of the evidentiary hearing, the state court denied

Petitioner's postconviction motion in a lengthy ruling from the bench.  *Id.* at

164-85.  With respect to the claims at issue here, the court held that Way

was not ineffective for not hiring an expert to address the veracity of child

sex abuse victims because such a request would have been considered

"frivolous" since an expert witness would not be permitted to comment on

whether a fact witness was telling the truth.  *Id.* at 166-67.

Way was not ineffective for not hiring an expert to testify about the

forensic evidence that could or should have been found, or to refute the
testimony of the CPT investigator, because the court would not have
permitted a physical examination of the child victim by a defense expert.
Further, there was no evidence presented that such an examination would
have resulted in any forensic finding.  The court moreover found that
Petitioner failed to establish that the outcome of the trial would have been
different if counsel had retained such an expert.  *Id.*  at 168-70.

Regarding counsel's asserted failure to secure deposition testimony
or to elicit testimony that the victim had a motive to lie, or was coerced by
family, the court found that counsel made a reasonable strategic decision
to limit his cross-examination of the victim in order not to alienate the jury,
and therefore counsel was not ineffective, and also that Petitioner had
failed to establish prejudice.  There was no evidence that the victim had
been coerced by family members, and it was not ineffective for counsel not
to take depositions of family members.  *Id.* at 171-76.  The court concluded
that the jury "could have hung their hat on the defendant's confession"
alone in finding Petitioner guilty.  *Id.* at 177.  The court agreed that the best
theory of the defense case, as explained by Way, was to attack the lack of
physical evidence, and that Way had a difficult case to present in light of

Petitioner's confession to McBride.  *Id.* at 177-78.

The court concluded its ruling as follows:

Mr. Way did everything he possibly could to get the jury to
disregard the defendant's confession.  To hone in and
hang their hat on the fact that, while the State could have
and should have collected physical evidence, not only
from the victim but from the place where she stayed . . .
he did everything he could to try to get a not guilty verdict.
. . . A defense confession is something that is exceedingly
difficult to overcome.  And to the extent that . . . I have
missed something in evaluating whether or not Mr. Way's
actions in any way were to be – constitute some sort of
ineffective representation, I certainly don't think that . . .
the defendant has met his burden on the second prong;
which is that the outcome of this trial would have been
different, had Mr. Way done anything differently to
represent Mr. Wimes.  And for those reasons, the motion
is denied.

*Id.* at 183-84.

Here, the state court clearly applied the correct *Strickland*

standard in evaluating Petitioner's ineffective-assistance claims.  Not

only did the state court find that counsel was not ineffective in the

various ways claimed by Petitioner, but the court ultimately found that

in any event none of Petitioner's arguments satisfied the prejudice

prong of *Strickland*.  *See id*.

Prejudice is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Strickland,* 466 U.S. at 694. A reasonable probability is one

sufficient to undermine confidence in the outcome. *Id.* "It is not enough for

the defendant to show that the error[ ] had some conceivable effect on the

outcome of the proceeding." *Id.* at 693. He must show that the result would

have been different. *See id.* Where ineffective assistance is based on

counsel's failure to call a witness, the burden to show prejudice is heavy

because "often allegations of what a witness would have testified to are

largely speculative." *Sullivan v. DeLoach,* 459 F.3d 1097, 1109 (11th Cir.

2006).

     Petitioner has not shown that the state trial court's denial of his

ineffective-assistance-of-counsel claims based on the lack of prejudice was

contrary to, or an unreasonable application of, *Strickland.*  In this Court,

Petitioner's claims that experts would have provided the favorable

testimony he describes are wholly speculative.  In the same vein, as the

state court found, there is no evidence that the victim's accusation of abuse

was coerced by family members.  The jury did hear testimony regarding the

victim's statements that she felt jealousy toward Petitioner after he moved

in with her family, and it was reasonable for the state court to conclude that

counsel made a strategic choice in not further probing the child-victim's

alleged motive in reporting the abuse. Moreover, as the state court found, the jury in any event could have weighed the evidence and based its guilty verdict on Petitioner's confession that he had a sexual relationship with the victim.

In sum, Petitioner has failed to show that he is entitled to habeas relief on these ineffective-assistance claims.

## V. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 25th day of July 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**